## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | |
| FARMLAND INDUSTRIES, INC., et al., | ) | Case No. 02-50557-JWV |
| | ) | Joint Administration |
| Debtors. | ) | |
| | ) | |
| SAFECO INSURANCE COMPANY OF | ) | |
| AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 03-4066-JWV |
| | ) | |
| CITY OF COFFEYVILLE, KANSAS, | ) | |
| FARMLAND INDUSTRIES, INC., and | ) | |
| INTRUST BANK, N.A. | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

Safeco Insurance Company of America ("Safeco") filed a nine-count complaint against the City of Coffeyville, Kansas ("Coffeyville"), Farmland Industries, Inc. ("Debtor"), and Intrust Bank, N.A. ("Intrust") seeking declaratory relief with respect to its potential liability for a $12,000,000 surety bond it issued on the Debtor's behalf.  The surety bond guaranteed the Debtor's future performance under an electrical services agreement ("ESA") with Coffeyville for the supply of electricity to the Debtor's petroleum coke gasification to nitrogen fertilizer facility ("Facility").  To meet its obligation under the ESA, Coffeyville built a new electrical power substation financed through the sale of bonds, held by Intrust as the indenture trustee.  The gist of Safeco's complaint is that Coffeyville negotiated with the purchaser of the Facility, Coffeyville Resources, LLC ("CRLLC"), to have the Debtor reject the ESA in its bankruptcy proceeding and thereby invoke Safeco's liability on the surety bond while at the same time Coffeyville and CRLLC entered into a new electrical service agreement.

Before filing an answer to the complaint, Coffeyville and Intrust filed Fed. R. Civ. P. 12(b) motion – as incorporated into bankruptcy proceedings by Fed. R. Bankr. P. 7012 – to dismiss Safeco's

complaint on the grounds that this Court lacks subject matter jurisdiction over the dispute, and that Safeco failed to state any claims upon which relief could be granted. Coffeyville also filed a separate motion requesting that this Court abstain from hearing the dispute. For the reasons stated herein, the Court will exercise subject matter jurisdiction over the dispute, not enter an order of abstention, and will deny Coffeyville and Intrust's Rule 12(b)(6) motion to dismiss Safeco's complaint.

## I. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a court must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them, and a court may dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984). Dismissal is appropriate "as a practical matter ... only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." *Bramlet v. Wilson*, 495 F.2d 714, 716 (8th Cir. 1974).

## II. BACKGROUND

The Debtor operated the Facility in Coffeyville, Kansas. When the Debtor began construction of the Facility in 1999, it found that the City of Coffeyville did not have sufficient electrical capacity to handle the Facility's demands. To remedy the problem, the Debtor negotiated, and on March 31, 1999, executed, the ESA with Coffeyville. Pursuant to the ESA, Coffeyville would build a new power substation financed through the sale of bonds, held by Intrust. In return, the Debtor covenanted in the ESA that it would provide a surety bond to Coffeyville to assure its continuing performance under the ESA in the amount of $12,000,000. That surety bond was to cover, *inter alia*, charges for electricity used by the Debtor and to cover Coffeyville's obligations on the bonds it issued to finance the construction of the new power substation. Safeco provided the surety bond and is a compensated commercial surety.

On May 31, 2002, the Debtor filed its Chapter 11 bankruptcy and began to sell its assets. On September 25, 2003, the Debtor executed an Asset Sale and Purchase Agreement ("APA") with CRLLC for the purchase of the Facility. Pursuant to the APA, CRLLC was to assume the ESA with

2

Coffeyville, and the APA was approved by this Court on October 7, 2003. The APA was consistent with the underlying terms of the ESA between the Debtor and Coffeyville, which required any purchaser of the Facility to assume the Debtor's obligations under the ESA. At the time, CRLLC was the only prospective, qualified purchaser of the Facility.

On October 23, 2003, however, CRLLC and Coffeyville purportedly negotiated an aleatory memorandum of agreement ("Memorandum") concerning the confection of a new electrical services agreement in the event CRLLC was successful in purchasing the Facility and in the event the Debtor rejected the existing ESA with Coffeyville. In the Memorandum, and in the event the aleatory conditions became certain, Coffeyville expressly promised not to assert rejection damages against the Debtor's bankruptcy estate, but Coffeyville retained the right to collect on the surety bond issued by Safeco. Nothing in the Memorandum was to prejudice any right of subrogation Safeco might have against the Debtor, in the event Safeco paid on the surety bond, or prejudice any right Intrust had to demand payment of the bonds issued to finance the electrical substation. In looking only to the surety bond in the event the Debtor rejected the ESA, Coffeyville was implicitly electing to look to the prospective agreement with CRLLC to satisfy what would otherwise be part of its rejection claim against the Debtor's estate.

Safeco asserts that the circumstances presented an opportunity for CRLLC and Coffeyville to negotiate a new agreement to the detriment of Safeco. At the time, CRLLC was the only qualified bidder for the Facility and Coffeyville was the only source of electrical power needed to operate the Facility. Safeco further contends that the purpose of the Memorandum was to accomplish what the Debtor was prohibited from doing in the ESA – namely, selling the Facility without requiring CRLLC to assume the ESA or to post security in lieu of Safeco's surety bond. Safeco states that both Coffeyville and CRLLC benefitted from the Memorandum because Coffeyville could negotiate a more favorable contract for the sale of electrical services to CRLLC and CRLLC could avoid some expense it would otherwise face by assuming the ESA and thereby servicing the bond payments to Intrust. Coffeyville also stood to gain a "manufactured" claim against the Debtor's bankruptcy estate and Safeco's surety bond to pay for the outstanding bonds held by Intrust.

On October 31, 2003, on the urging of CRLLC, the Debtor filed a motion to reject the ESA in this Court, and on November 4, 2003, the Debtor and CRLLC confected an amended asset sale and purchase agreement ("Amended APA") altering the terms of the original APA by providing that the

ESA would not be assumed by CRLLC.  By confecting the Amended APA, which was approved by the Court, the Debtor was agreeing to rejection damage claims against its bankruptcy estate, and by implication, against Safeco's surety bond.  Safeco asserts that the Debtor agreed to the Amended APA because it had no viable alternatives.  On March 3, 2004, the Debtor and CRLLC closed the sale of the Facility pursuant to the Amended APA, and CRLLC is currently purchasing electricity from Coffeyville under the terms of the Memorandum.  Coffeyville is not applying any amount of the revenues generated by the sale of electricity to CRLLC to payment on the utility bonds held by Intrust.

On April 5, 2004, Coffeyville filed a proof of claim in the Debtor's bankruptcy seeking $9,029,144.44 in recovery for the aggregate outstanding balance on the utility bonds, plus accrued interest and the fees of Intrust, based on the Debtor's breach of the ESA.  In turn, Safeco filed a proof of claim in the Debtor's bankruptcy case for the total penal amount of its surety bond, $12,000,000.

## III. DISCUSSION

Coffeyville filed a motion to dismiss this case based on lack of subject matter jurisdiction, and in the alternative for abstention. Both Coffeyville and Intrust filed motions to dismiss Safeco's complaint under Rule 12(b)(6) for failure to state claims upon which relief could be granted.

### A. Subject Matter Jurisdiction

Coffeyville contends that this Court lacks subject matter jurisdiction in adjudicating Safeco's adversary complaint on the basis that the issues raised therein are not "bankruptcy related."  More specifically, Coffeyville asserts that the Court's order allowing the Debtor to reject the ESA also sets a maximum cap on the amount of the Debtor's liability for that rejection; thus, the only issues remaining after rejection of the ESA were state law contract claims by Coffeyville and Intust against the Safeco bond. Furthermore, Coffeyville asserts that resolution of its claims has no effect on the administration of the Debtor's bankruptcy estate on the grounds that the Debtor's Chapter 11 plan is already confirmed, the plan is one of liquidation and not reorganization, and any claim against the Debtor would be asserted against the Debtor's liquidating trustee.

Bankruptcy courts have jurisdiction over a vast array of substantive matters.  A bankruptcy court's jurisdiction includes the district court's grant of original and exclusive jurisdiction of all cases

arising under the Bankruptcy Code,  28 U.S.C. § 1334(a), and also a grant of original – but not exclusive – jurisdiction over civil proceedings arising under the Bankruptcy Code, even if Congress did not otherwise confer an independent grant of jurisdiction on the district courts.  § 1334(b). Accordingly, the bankruptcy court's exclusive jurisdiction extends to "all of the property, wherever located, of the debtor as of the commencement of the case, and of such property of the estate."  § 1334(e).  The court's original, but non-exclusive jurisdiction, extends to matters "arising in," "under," or "related to" the bankruptcy case.  § 1334(b).  More specifically, a controversy "arises in" Title 11 when "it would have no practical existence but for the bankruptcy," *Grausz v. Englander*, 321 F.3d 467, 471 (4th Cir. 2003); claims arise "under" Title 11 if the claims "clearly invoke substantive rights created by bankruptcy law," *Glinka v. Federal Plastics Manufacturing, Ltd. (In re Housecraft Industries USA, Inc.)*, 310 F.3d 64, 70 (2nd Cir. 2002); and claims are "related to" a bankruptcy case if the resolution of the dispute affects the administration of the bankruptcy estate.  *Belcufine v. Aloe*, 112 F.3d 633, 636 (3rd Cir. 1997).  As stated by the Eighth Circuit, a claim is "related to" a bankruptcy case when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.... An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action ... and which in any way impacts upon the handling and administration of the bankrupt estate." *Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.)*, 810 F.2d 782, 786 (8th Cir. 1987) (quoting *Pacor v. Higgins*, 743 F.2d 984, 994 (3rd Cir. 1984)).  *See also National Union Fire Insurance Company of Pittsburgh Pa. v. Titan Energy, Inc.*, 837 F.2d 325, 330 (8th Cir. 1988) ("[E]ven a proceeding which portends a mere contingent or tangential effect on a debtor's estate meets the broad jurisdictional test ....").

In this matter, the Debtor rejected the ESA with Coffeyville and the rejection triggered Safeco's obligation to pay its surety bond on the Debtor's default.  Coffeyville has the right "under" the Bankruptcy Code to file a proof of claim pursuant to 11 U.S.C. §§ 365(g) and 502(g) in the Debtor's bankruptcy case for rejection damages, and in fact, Coffeyville and Intrust filed a joint proof of claim, No. 9189, on January 16, 2004, asserting their right to rejection damages.  On June 10, 2004, the Debtor objected to the proof of claim filed by Coffeyville and Intrust (Document No. 10279), based in part on the grounds that Coffeyville failed to mitigate damages and to discount the amount of its damages to present value.  Inseparably tied to that proof of claim is Coffeyville's claim against Safeco on the surety bond. Anticipating that it might be liable for the penal sum of its surety bond,

5

Safeco filed a $12,000,000 proof of claim against the Debtor's bankruptcy estate.

Based on these facts, it is clear that Coffeyville and Intrust's claim against the Debtor's bankruptcy estate arises out of the Debtor's rejection of the ESA under § 365 of the Bankruptcy Code. Allowance of a claim in bankruptcy is a core matter over which this Court has jurisdiction. 28 U.S.C. § 157(b)(2)(B). Parallel to that core proceeding is Coffeyville's claim against Safeco on the surety bond, which is also a direct consequence of the Debtor's election to reject the ESA under 11 U.S.C. § 365. In the event Safeco is obligated to pay Coffeyville and Intrust on the surety bond, Safeco will also be subrogated to Coffeyville and Intrust's proof of claim against the Debtor's bankruptcy estate. In fact, the Debtor has set aside approximately $12,000,000 to pay the potential claims of Coffeyville and Safeco. The Debtor is a named defendant in Safeco's civil proceeding, despite the fact that the thrust of the compliant alleges wrongdoing by Coffeyville and CRLLC, because a determination of Safeco's liability, if any, is a *de facto* determination of the amount of Safeco's claim against the Debtor's bankruptcy estate.

Indeed, Coffeyville's claims against the Debtor and Safeco for the Debtor's rejection of the ESA are inseparably linked – any defense the Debtor has against Coffeyville in the claims proceeding inures to the benefit of Safeco, and any defenses Safeco has against payment on the surety bond inures to the benefit of the Debtor inasmuch as Coffeyville relinquished the right in the new electrical services agreement it reached with CRLLC to pursue the Debtor for rejection damages, except for those it could assert against Safeco's surety bond. In essence, this Court's refusal to exercise subject matter jurisdiction over Safeco's complaint for declaratory relief would effectively result in an abstention from the Debtor's claims objection proceeding to avoid risking the possibility that two separate tribunals might reach inconsistent judgments.

Coffeyville's assertion that this dispute has no effect on the administration of the Debtor's bankruptcy estate is not convincing. Considering the panoply of disputes that Congress gave bankruptcy courts jurisdiction to adjudicate, and considering the Eighth Circuit precedent that *any* proceeding that alters the Debtor's rights or liabilities is within the jurisdiction of the bankruptcy court, this Court is unwilling to find that it does not have subject matter jurisdiction over litigation that has the potential to result in a $12,000,000 claim against the Debtor's estate. Because Safeco's complaint for declaratory relief is so intimately related to the claims allowance process of the Debtor's bankruptcy estate, Safeco's declaratory action against Coffeyville, Intrust, and the Debtor

6

is related to the administration of the Debtor's bankruptcy estate and this Court has subject matter jurisdiction over the dispute.[1]

## B. Abstention

As an alternative to dismissal, Coffeyville requests that this Court abstain from adjudicating the proceeding. Coffeyville argues that the State of Kansas has an interest in seeing that insurance companies, like Safeco, fulfill their duty to timely investigate insurance claims in good faith. Coffeyville also asserts that Safeco filed the declaratory action as a "cover" for a bad faith decision to deny Coffeyville's bond claim without investigation, and that the filing of the declaratory action was a pre-emptive, forum-shopping to increase the costs and inconvenience to Coffeyville and Intrust.

Pursuant to 28 U.S.C. § 1334(c)(1), a bankruptcy court may, in the interests of justice and comity, abstain from hearing a bankruptcy-related proceeding. In determining whether abstention is appropriate under § 1334(c)(1), courts consider numerous factors, including the following:

(1) The extent to which the issues involve difficult or unsettled issues of state law.
(2) The extent to which state law or other esoteric and technical issues predominate.
(3) The effect of abstention on the efficient administration of the bankruptcy proceedings.
(4) The presence of a commenced state law action in which the matter may be determined.
(5) The degree of relatedness to the main bankruptcy proceeding.
(6) The burden on the bankruptcy court's docket.
(7) The likelihood that one of the parties is forum shopping.
(8) The presence or necessity in the proceeding of non-debtor parties.
(9) The existence of a jurisdictional basis other than 28 U.S.C. § 1334.
(10) The existence of a right to a jury trial and whether the parties do or do not consent to jury trial in the bankruptcy court.
(11) The financial condition of the parties.
(12) The case's status as a "related" matter rather than a core proceeding.

*Phelps Technologies, Inc. v. O'Connor (In re Phelps Technologies, Inc.)*, 238 B.R. 819, 823 (Bankr. W.D. Mo. 1999). *See also Williams v. Citifinancial Mortgage Co. (In re Williams)*, 256 B.R. 885, 894 (B.A.P. 8th Cir. 2001) (considering the feasibility of severing state law claims from core

---

[1] The Court makes no ruling here that Safeco's surety bond, issued on behalf of the Debtor, is property of the Debtor's estate. See *O'Malley Lumber Co. v. Lockard (In re Lockard)*, 884 F.2d 1171, 1176-78 (9th Cir. 1989) (holding that a surety bond was not property of the estate and not subject to the automatic stay). The Court is only ruling that Safeco's declaratory action is related to the Debtor's bankruptcy proceeding, which is sufficient to give the Court jurisdiction to adjudicate this dispute.

bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court); *J.R. Simplot Co. v. Farmland Indus. (In re Farmland Indus.)*, 294 B.R. 892, 900 (Bankr. W.D. Mo. 2003) (stating that these factors are to be applied with flexibility; no one factor is determinative and the relevance of any particular factor depends on the circumstances of the individual case), *vacated*, 296 B.R. 497 (Bankr. W.D. Mo. 2003).

Based on the particular circumstances of this case, abstention is not warranted.

This case does not present any difficult or unsettled issues of state law. Safeco's nine-count complaint seeks declaratory relief on theories of waiver, release, breach of contract, impairment of security, equitable subrogation, estoppel, and injunctive relief. Safeco's arguments are essentially no different than those asserted by any commercial surety contesting a potential claim to a surety bond. Furthermore, despite Coffeyville's allegations of bad faith investigation in its motion for abstention, the Court is not aware that Coffeyville has filed any claim against Safeco based on that alleged breach of duty, and no proceeding was ever initiated in a Kansas court to adjudicate the parties' rights before Safeco commenced its declaratory action in this Court. There are no particular esoteric or technical issues in Safeco's declaratory action that make this dispute more particularly adapted to a different tribunal.

Abstaining in this matter would also affect other proceedings in the Debtor's bankruptcy. Most significantly, presently pending before the Court is the parallel claim objection proceeding initiated by the Debtor against Coffeyville and Intrust. As stated *supra*, the declaratory action is intimately related to the bankruptcy proceeding inasmuch as the declaratory action overlaps with the Debtor's objection to Coffeyville and Intrust's proof of claim and both proceedings affect the relative debtor-creditor relationships between the Debtor, Coffeyville, Intrust, and Safeco. Although the bankruptcy court is sufficiently busy, the Court has no reason to believe that it is any more or less busy than any other court, and retaining jurisdiction over this case is not overly burdensome to the Court's docket.

Contrary to Coffeyville's assertions, the Court discerns no ulterior forum-shopping scheme. Representatives of both Coffeyville and Safeco have been to this Court on numerous occasions while the Debtor and CRLLC negotiated and submitted the APA. The injury complained of – the Debtor's breach of the ESA – occurred in this Court, and Coffeyville's claim to the Safeco bond is a direct result of that contract being rejected. The Court does not harbor any doubts that the City of Coffeyville has sufficient financial resources for its representatives to make a few short trips to Kansas City, if

8

necessary, to litigate this matter.  Finally, although Coffeyville asserts that it has a right to a jury trial on Safeco's declaratory action for breach of contract, Coffeyville has not filed any demand for a jury trial.

Therefore, the Court does not find it appropriate to abstain from adjudicating this matter in favor of another tribunal.

## C. Failure to State a Claim

In its nine-count complaint, Safeco argues that the actions of Coffeyville have either waived or in some way released, in whole or in part, Safeco's obligation to pay on the surety bond securing the Debtor's performance of the ESA.  In essence, Safeco argues that CRLLC did not want to assume the existing ESA between the Debtor and Coffeyville when it purchased the Facility; thus, CRLLC negotiated with the Debtor to reject the ESA and negotiated with Coffeyville to enter into a new electrical services agreement.  Coffeyville's acquiescence to the negotiations for confecting a new electrical services agreement with CRLLC – before the Debtor requested Court authority to reject the ESA – is the primary act giving rise to Safeco's declaratory action.  Accepting as true all of the factual allegations in the complaint, as well as the reasonable inferences that can be drawn from them, the Court will deny Coffeyville's and Intrust's Rule 12(b)(6) motions.

### Counts 1, 2, and 3 - Waiver, Material Alteration, and Impairment of Security

In Count 1, Safeco alleges that Coffeyville, by agreeing to the Memorandum with CRLLC, waived its right to require that the Debtor be held to its obligation under the ESA to provide assurances that any approved purchaser of the Facility would assume the ESA.  In Count 2, Safeco argues that the alleged waiver was a material alteration of the ESA that discharged Safeco from its obligations under the surety bond.  In Count 3, Safeco argues that the alleged waiver impaired the value of Safeco's security on the surety bond.  The underlying premise of Safeco's allegations is that the events surrounding the confection of the Memorandum between Coffeyville and CRLLC provide evidence of Coffeyville's intent to contrive the Debtor's rejection of the ESA in an attempt to gain a windfall, but in doing so, Coffeyville released the Debtor from its obligation under the ESA to require any prospective purchaser to assume that contract.

"Waiver in contract law implies that a party has voluntarily and intentionally renounced or given up a known right, or has caused or done some positive act or positive inaction which is inconsistent with the contractual right."  *United American State Bank & Trust Co. v. Wild West*

*Chrysler Plymouth, Inc.*, 561 P.2d 792, 795 (Kan. 1977).  Once a contractual right is waived, it cannot later be asserted in a court of law.  *Id.*  A waiver is consensual in nature; a party must intend to waive known rights.  *Prather v. Colorado Oil & Gas Corp.*, 542 P.2d 297, 303 (Kan. 1975).  That intention may be inferred from a party's conduct, and the knowledge may be actual or constructive. *Stratmann v. Stratmann*, 628 P.2d 1080, 1087 (Kan. 1981).  *See also Steele v. Nelson*, 32 P.2d 253, 256 (Kan. 1934) ("It is the universal rule that one seeking to enforce a contract may waive a provision of the contract that is in his favor. Such waiver does not render the contract unenforceable.").  In the event a party waives a right securing an obligation under a contract, the obligor, and the obligor's surety, are released to the extent that the waiver of that right had value.  *See Restatement (Third) Suretyship & Guaranty* § 39 (1996).  Quite simply, "a bond obligee may not increase the surety's risk or otherwise undermine the surety's subrogation rights."  *Pennsylvania National Mutual Casualty Insurance Co. v. City of Pine Bluff*, 354 F.3d 945, 952 (8th Cir. 2004).

Construing all inferences in favor of Safeco, there is enough evidence to state a claim for relief consistent with Safeco's allegations that Coffeyville waived its right under the ESA that any prospective purchaser of the Facility had to assume the contract and that through the Memorandum Coffeyville acted to release, in whole or in part, the Debtor and Safeco from the requirement that the ESA be assumed by CRLLC.

More specifically, Safeco alleges that through the Memorandum, Coffeyville and CRLLC communicated to the Debtor that CRLLC would not purchase the facility if it had to assume the ESA. The Memorandum also served to inform the Debtor that if CRLLC acquired the Facility then Coffeyville would be willing to enter into a new electrical services agreement with CRLLC.  Some incentive for the Debtor to reject the ESA was also part of the Memorandum.  Coffeyville expressly agreed that it would not assert its right for rejection damages in the Debtor's bankruptcy proceeding – except for its rights against Safeco's surety bond.[2]  In effect, the Memorandum served to abridge any "personal" liability of the Debtor above the amount of Safeco's surety bond and provided at least some amount of encouragement should the Debtor choose to reject the ESA.  Furthermore, Safeco

---

[2] The Debtor became an intended third party beneficiary to the Memorandum, and became entitled to enforce that agreement when the aleatory events became certain.  *Restatement (Second) Contracts* § 304 ("A promise in a contract creates a duty in the promisor to any intended beneficiary to perform the promise, and the intended beneficiary may enforce the duty.").

alleges that Coffeyville, not CRLLC, was the primary instigator in causing CRLLC to negotiate with the Debtor for rejection of the ESA and that Coffeyville hatched the Machiavellian plot to not only collect on Safeco's surety bond to pay for the electrical substation it built to service the Debtor's power needs, but to also "double dip" by continuing to sell electricity to CRLLC without the underlying debt obligations to Intrust. Safeco maintains that by allegedly instigating the Debtor's breach of the ESA, Coffeyville in effect waived the condition that any new purchaser must assume the existing ESA.

By alleging that Coffeyville acted inconsistently with its known contractual right under the ESA that CRLLC be required to assume that contract – insofar as Coffeyville provided the incentive for CRLLC to negotiate the rejection of the ESA with the Debtor and provided the Debtor with encouragement to breach the ESA – Safeco states a claim for relief. Safeco's claims are consistent with the maxim of law that if one who has the right to performance acts to prevent or hinder that performance then that party cannot assert a claim for damages based on a subsequent breach. *Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 725 (4th Cir. 2000) (explaining the "prevention doctrine," as "a generally recognized principle of contract law according to which if a promisor prevents or hinders fulfillment of a condition to his performance, the condition may be waived or excused.").

Therefore, Safeco should be allowed to pursue its claims in Counts 1, 2, and 3 for release, release by material alteration, and for impairment of its security by effectuating the purported release.

**Count 4 – Impairment of Security**

In Count 4, Safeco asserts that Coffeyville failed to require that the Debtor provide a payment security instrument to cover some electrical service charges, which had the effect of increasing Safeco's exposure on the surety bond.

In the event a party waives a right securing an obligation under a contract, the obligor, and the obligor's surety, are released to the extent that the waiver of the right had value. *See Restatement (Third) Suretyship & Guaranty* § 39 (1996).

Safeco asserts that the ESA required the Debtor to maintain a security instrument sufficient to cover payment of "the aggregate CSWS Charges ... to be assessed by CSWS to [Coffeyville] under

the CSWS Transmission Services Agreement."[3]  Safeco asserts that Coffeyville failed to obtain and maintain the collateral required from the Debtor to secure the CSWS obligations, which had the effect of increasing the amount of Safeco's exposure on the surety bond inasmuch as that obligation was secondarily bonded by Safeco.  Accordingly, Safeco has stated a claim for relief inasmuch as Coffeyville, by failing to enforce a term of the ESA, purportedly increased Safeco's exposure on the surety bond.

### 1. Counts 5 and 7 – Conventional Breach of Contract

In Count 5, Safeco asserts that Coffeyville committed the first breach of the ESA by negotiating the Memorandum with CRLLC; thus, Coffeyville is now precluded from asserting any present or future claims against the Debtor's bankruptcy estate or against Safeco's surety bond. In Count 7, Safeco asserts that it is entitled to damages for Coffeyville's breach of contract.

It is axiomatic that a conventional claim for a breach of contract requires: "(1) the existence of a contract between the parties; (2) consideration; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) defendant's breach of the contract; and (5) that plaintiff was damaged by the breach." *Britvic Soft Drinks, Ltd. v. ACSIS Technologies, Inc.*, 265 F. Supp 2d. 1179, 1187 (D. Kan. 2003).  In every contract, there is an implied covenant of good faith and fair dealing.  *Daniels v. Army National Bank*, 822 P.2d 39, 43 (Kan. 1991).  Pursuant to the duty of good faith, one party cannot "intentionally and purposely do anything to prevent the other party from carrying out his part of the agreement, or do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract."  *Bonanza, Inc. v. McLean*, 747 P.2d 792, 801 (Kan. 1987).

In this case, no party disputes that the ESA between the Debtor and Coffeyville was a valid contract, that the Debtor breached that contract when it sought Court approval to reject the ESA under 11 U.S.C. § 365, or that Coffeyville – and by implication, Safeco – was injured by the Debtor's breach.  Safeco's arguments, however, do not rest on the Debtor's rejection of the ESA; rather, Safeco argues that Coffeyville breached its duty of good faith before the Debtor rejected the ESA by negotiating the Memorandum with CRLLC.  The act of negotiating the Memorandum, according to

---

[3] The Court is not aware of the nature of the fees charged by Central and Southwest Services, Inc. ("CSWS").

Safeco, made the Debtor's rejection of the ESA a "mere bankruptcy formality and a by-product of Coffeyville's collusive actions in breach of the ESA."

No inference exists that Coffeyville breached the express terms of the ESA. The Memorandum between Coffeyville and CRLLC was an aleatory contract – it had no effect unless and until certain conditions precedent were fulfilled. Namely, the Debtor, which was not a party to the contract, had to agree to reject the ESA with Coffeyville under the Bankruptcy Code and CRLLC had to be the eventual purchaser of the Facility. The Debtor's acquiescence was problematic inasmuch as the Debtor would likely have to agree to a multi-million dollar reduction in the value of the overall sale as its bankruptcy estate would become liable for rejection damages – even if only asserted by Safeco through subrogation principles. Neither one of the events – rejection or closing with CRLLC – was certain when the Memorandum was confected on October 23, 2003. The Debtor did not seek to reject the ESA until October 31, 2003, CRLLC and the Debtor still had to confect the Amended APA and seek Court approval, and in fact, the final sale of the Facility to CRLLC did not take place until March 3, 2004.

Quite simply, Coffeyville did not fail to perform its express obligations under the ESA before the Debtor rejected that contract; Coffeyville merely acted to protect its right to receive future payments for supplying the Facility with electrical services regardless of what happened in the Debtor's bankruptcy. Entering into an aleatory contract to plan for the contingency that the Debtor would breach the existing ESA and that CRLLC would be the eventual purchaser is not, and cannot be, a conventional breach of the express terms of the ESA itself.

On the other hand, enough inferences are present for Safeco to assert a claim for the breach of the implied covenant of good faith and fair dealing. While an implied covenant of good faith and fair dealing is ordinarily not a bar to a contracting party to plan for contingencies, the covenant may be breached, consistent with the prevention doctrine, on the basis that the "implied covenant of good faith and fair dealing requires a promisor to reasonably facilitate the occurrence of a condition precedent by either refraining from conduct which would prevent or hinder the occurrence of the condition, or by taking positive action to cause its occurrence." *Cauff, Lippman & Co. v. Apogee Financial Group, Inc.*, 807 F. Supp. 1007, 1022 (S.D.N.Y. 1992). Namely, Safeco stated a claim for breach of the implied covenant of good faith by Coffeyville inasmuch as it alleged that Coffeyville did not act consistently with the requirement in the ESA that CRLLC, a potential purchaser of the Facility,

13

assume the existing ESA; rather, Coffeyville provided a permissive basis – through the Memorandum – to encourage CRLLC to negotiate with the Debtor for rejection of the ESA and provided the Debtor with some incentive for doing so by agreeing to limit any rejection damages.

Accordingly, the Court finds that Safeco has stated a claim upon which relief could be granted in Counts 5 and 7 of its complaint for declaratory relief inasmuch as the facts Safeco alleges provide some reasonable inferences that Coffeyville may have breached the implied covenant of good faith and fair dealing.

### Count 6 – Equitable Subrogation

Safeco asserts in its complaint for declaratory relief that it is entitled, to the extent of its liability on the surety bond, to any rights of Coffeyville in the proceeds derived from its operation of the electrical substation.

"The right of subrogation is not founded on contract. It is a creature of equity; is enforced solely for accomplishing the ends of substantial justice and is independent of any contractual relations between the parties." *Memphis & L.R.R. Co v. Dow*, 120 U.S. 287, 301-02, 7 S. Ct. 482, 30 L. Ed. 595 (1887). The term "equitable subrogation" is defined as the legal fiction whereby a "person who pays the debt for which another is primarily responsible is substituted ... to all rights and remedies of [the] other." *Black's Law Dictionary* 539 (6th ed. 1990). In the case of *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 141-42, 83 S. Ct. 232, 9 L. Ed. 190 (1962), the Supreme Court affirmed a surety's subrogation rights to not only substitute itself in place of a fully paid creditor against the obligor, but also to subrogate itself to the rights of the obligor to any retainage or performance due pursuant to the underlying contract that was owed by the creditor to the obligor. *See Restatement (Third) Suretyship & Guaranty* § 31 (1996) (providing that a surety has the right to be paid the obligee's return performance). Indeed, as recognized in *National Shawmut Bank of Boston v. New Amsterdam Casualty Co., Inc.*, 411 F.2d 843, 845 (1st Cir. 1969), circumstances may arise, especially in construction contracts, whereby a surety guaranteeing the payment and performance of a contractor would be subrogated to the rights of: 1) the contractor, insofar as receivables are due; 2) of laborers and material men, insofar as they have liens; and 3) the obligee for whom the job was completed. A prerequisite to any claim of "equitable subrogation" is that the surety fully pay the underlying debt or obligation. *American Surety Co. of New York v. Westinghouse Manufacturing Co.*, 296 U.S. 133, 137, 56 S. Ct. 9, 89 L. Ed 105 (1935).

14

In Count 6 of its complaint, Safeco requests declaratory relief recognizing – in the event it must pay Coffeyville on the surety bond – that it is equitably subrogated to any rights of Coffeyville in the proceeds derived from the operation of the electrical substation it built to accommodate the Debtor's electrical power demands. Under the doctrine of equitable subrogation, however, Safeco would be subrogated to the rights of Coffeyville, but only to those rights related to the Debtor's breach of the underlying contract – i.e., Safeco steps into the shoes of Coffeyville as a creditor and would be entitled to assert any right that Coffeyville has on the underlying contract.  For example, if the Debtor was past due on an electrical services payment before rejection of the ESA, Safeco, through subrogation, would be entitled to receive that payment.  Construing all reasonable inferences in favor of Safeco, and thereby assuming that the Debtor failed to make payments under the ESA to Coffeyville before the Debtor rejected the ESA, then upon total satisfaction of Coffeyville's claims, Safeco would be equitably subordinated to Coffeyville's right to collect proceeds derived from operation of its electrical substation that were due from the Debtor.  Nothing in the doctrine of equitable subrogation, however, would otherwise allow Safeco to be entitled to future proceeds derived from the operation of the electrical substation garnered from CRLLC, outside of a reduction in the amount of its liability due from Coffeyville's duty to mitigate damages.  Thus, Safeco has stated a cause of action in Count 6.

### Counts 8 – Equitable Estoppel

In Count 8 of its complaint, Safeco asserts that Coffeyville and Intrust are equitably estopped from asserting any claim on the surety bond based on their purported bad conduct.  More particularly, Safeco alleges that Coffeyville covenanted in the ESA that it would require assumption of the ESA by a subsequent purchaser, Safeco relied on Coffeyville to enforce that covenant, and   Coffeyville frustrated that covenant when it entered into an aleatory contract – embodied in the Memorandum – with CRLLC by promising to confect a new electrical services agreement in the event the Debtor rejected the existing ESA and in the event CRLLC was the successful purchaser.

Safeco and Intrust assert that equitable estoppel is not a cause of action; rather, it is a defense to a cause of action.

Pursuant to 29 U.S.C. § 2201, a party to a controversy may file a declaratory action to determine the rights and legal relations of interested parties whether or not further relief is or could be sought.  "Equitable estoppel is the effect of the voluntary conduct of a party whereby it is

precluded, both at law and in equity, from asserting rights against another person relying on such conduct." *Gillespie v. Seymour*, 823 P.2d 782, 788-89 (Kan. 1991). "Estoppel requires (1) words, acts, conduct, or acquiescence causing another to believe in the existence of a certain state of things; (2) willfulness or negligence with regard to the acts, conduct, or acquiescence; and (3) detrimental reliance by the other party upon the state of things so indicated." *In re Food Barn Stores*, 174 B.R. 1010 (Bankr. W.D. Mo. 1994) (citations omitted).

In this case, the facts alleged in Safeco's complaint, and inferences from those facts, are sufficient to demonstrate that Coffeyville, through the ESA, caused Safeco to believe that any new purchaser of the facility would assume the ESA, and that Safeco relied on that particular term in the ESA. Concerning the willful or negligent conduct element, the Court finds – consistent with its discussion on the prevention doctrine and the breach of the implied covenant of good faith and fair dealing – that Safeco has stated a claim in Count 8 for equitable estoppel. More specifically, as alleged by Safeco, it relied on the assumption clause in the ESA, Coffeyville acted either wilfully or negligently with regard to Safeco's reliance by creating an encouraging environment for CRLLC to negotiate with the Debtor for rejection of the ESA and in providing the Debtor with some incentive for agreeing to that rejection, and Coffeyville negotiated the Memorandum with CRLLC knowing that Safeco was relying, to its detriment, on the assumption clause of the existing ESA.[4]

**Count 9 – Injunction**

In Count 9, Safeco requests a declaration of injunctive relief under Fed. R. Bankr. P. 7065 enjoining Coffeyville and Intrust from making a claim against the Debtor and Safeco under the surety bond. In the event that Safeco avoids liability on the bond on a valid cause of action, Safeco can assert a claim for a preliminary injunction. Thus, Count 9 will not be dismissed at this time.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that it has subject matter jurisdiction over Safeco's declaratory action, the Court is not willing to enter an order of permissive abstention, and

---

[4] In so deciding, the Court is mindful of its ruling that the Debtor and CRLLC negotiated the Amended APA and rejection of the ESA at arms length and in good faith. That finding, however, concerns the Debtor and CRLLC – it does not address Safeco's contention that Coffeyville breached the ESA through its actions in confecting the Memorandum.

Safeco has asserted valid claims upon which relief could be granted in its declaratory action against Coffeyville, Intrust, and the Debtor.  In ruling on this Rule 12(b)(6) motion, the Court is not adjudicating the merits of Safeco's claim, and expresses no opinion on the eventual success or failure of Safeco's causes of action.  This opinion constitutes the Court's conclusions of law based on the facts in Safeco's complaint and the inferences reasonably drawn therefrom.  A separate, interlocutory order shall be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 8th day of July, 2004.

/s/ Jerry W. Venters
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was mailed
electronically or conventionally to:
G. Stanton Masters
J. Michael Franks
Bruce E. Strauss
Laurence M. Frazen
Terry C. Cupps
Samuel P. Logan